IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **TRUSTEES OF NAT'L AUTO. SPRINKLER INDUS. FUND, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | Civil Action No.: PWG-12-0064 |
| | * | |
| **UNITED AUTO. SPRINKLERS, INC., et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | ****** | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Renewed Motion for Entry of Default Judgment Against Defendants (the "Motion") (ECF No. 20) and Correspondence Correcting Earlier Submission ("Motion Supplement") (ECF No. 23) filed by Trustees of the National Automatic Sprinkler Industry Welfare Fund; Trustees of the National Automatic Sprinkler Local 669 UA Education Fund; Trustees of the National Automatic Sprinkler Industry Pension Fund; and Trustees of the Sprinkler Industry Supplemental Pension Fund (collectively "Plaintiffs" or the "Collective Funds"). Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover delinquent pension fund contributions and related relief from United Automatic Sprinklers, Inc. ("United"); Michael Hillenbrand; and Andrea Hillenbrand (collectively "Defendants"). *See* 29 U.S.C. § 1001 (2012). The Clerk entered default against United and Michael Hillenbrand on April 30, 2012 (ECF No. 10) and against Andrea Hillenbrand on September 11, 2013 (ECF No. 18). Defendants have not filed a response and the time for doing so has passed. *See* Local Rule 105.2(a) (D. Md.).

Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, the Honorable Paul W. Grimm referred this matter to me for making a Report and Recommendation concerning default judgment and/or damages.  For the reasons stated herein, I recommend the Court GRANT the Motion and award Plaintiffs damages and associated relief as enumerated below.

## I.      Factual and Procedural Background

The Collective Funds qualify as employee benefit plans under ERISA.  29 U.S.C. § 1002(1); 29 U.S.C. § 1002(2)(A).  They also qualify as multiemployer plans.  29 U.S.C. § 1002(37)(A).  They were established pursuant to a series of collective bargaining agreements between United and Road Sprinkler Fitters Local Unions 699 and 709.  ECF No. 23, Ex. B-L. Under these agreements, United agreed to contribute to the Collective Funds on behalf of its employees.

United failed to make the required benefit contributions.  The parties entered into a settlement agreement on June 11, 2011, allowing for systematic payment over time of all amounts owed.  ECF No. 23, Ex. A.  The agreement required payment of $155,981.05, constituting missed contributions and accrued interest at 7% per annum.  This sum was to be paid in monthly installments of $9,153.75 beginning July 1, 2011.  The agreement further provided that previously assessed liquidated damages of $30,486.33 would be waved so long as United made timely payments in conformity with the settlement agreement, paid future monthly contributions to the Collective Funds as they became due, and submitted all future monthly remittance reports as required by the collective bargaining agreements.  Under the agreement, if United failed to abide by any of the conditions, Plaintiffs were entitled to immediately collect the entire remaining settlement debt and reassess liquidated damages.  Michael and Andrea Hillenbrand agreed to personally guarantee all terms in the settlement agreement.

Plaintiffs filed a Complaint on January 6, 2012, under ERISA, 29 U.S.C. § 1002, alleging that Defendants had violated the terms of the settlement agreement by falling behind on settlement payments and failing to make subsequent monthly contributions to the Collective Funds.  ECF No. 1.  Plaintiffs sought to collect $134,064.10 still owed pursuant to the settlement agreement; $76,027.84 for subsequent past-due contributions to the Collective Funds; interest; $19,514.74 in liquidated damages; costs and attorneys' fees.

Plaintiffs served Defendants with the Complaint alleging breaches of the collective bargaining agreements and settlement agreement.  The Complaint was served on United and Michael Hillenbrand on January 17, 2012, and their time to respond expired, without reply, on February 7, 2012.  The Court entered a default judgment against United and Michael Hillenbrand on April 30, 2012.  The Complaint was served on Andrea Hillenbrand on June 6, 2012, and the time to respond expired, without reply, on July 7, 2012.  The Court entered default judgment against Andrea Hillenbrand on September 11, 2013.

Plaintiffs' Motion alleges that while Plaintiffs have been successful in collecting $7,690.39 from Defendants since the filing of the initial action, the amount owed by Defendants has nonetheless increased since that filing.  Plaintiffs allege that even after applying the $7,690.39 to what Defendants owe on past due contributions, Defendants still owe $160,217.48 for subsequent past-due contributions to the Collective Funds, $49,379.68 in interest assessed at 12% per annum, $42,442.51 in liquidated damages, $505.00 in costs, $1,381.25 in attorneys' fees, and $134,064.10 in default on the settlement agreement.

## II.      Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the Court may enter a default judgment against the defendant pursuant to Rule 55(b)(2). In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted). However, "liability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability." *See* Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2010); *see also Ryan*, 253 F.3d at 780–81 (holding that acceptance of facts plead by the non-defaulting party "does not necessarily entitle the [party] to the relief sought").

The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but finds that default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the plaintiff establishes liability, the Court then turns to the determination of damages. *See Ryan*, 253 F.3d at 780. In determining damages, the Court cannot accept Plaintiffs' factual allegations as true and must make an independent determination. *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must

not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ.

P. 54(c). While the Court may conduct an evidentiary hearing to determine damages, it is not

required to do so. *See, e.g.*, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D.

Md. 2010); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009

WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a

formal evidentiary hearing on the issue of damages" after default judgment was entered against

defendant because plaintiff submitted affidavits and printouts of electronic records establishing

the amount of damages it sought); *DirecTV, Inc. v. Yancey*, No. Civ. A. 404CV00011, 2005 WL

3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that a hearing was "not required to enter

default judgment" because plaintiff "presented sufficient evidence to support its claim for

damages, costs and fees by way of uncontradicted affidavits"). The Court may rely instead on

affidavits or documentary evidence of record to determine the appropriate sum. *See, e.g.,*

*Monge*, 751 F. Supp. 2d at 794–95 (citing cases in which damages were awarded after a default

judgment, and without a hearing, based on affidavits, printouts, invoices, or other documentary

evidence).

## III.    Discussion

More than two years have passed since Plaintiffs served their Complaint on Defendants,

yet Defendants failed to plead or otherwise assert a defense. Therefore, the Court deems all of

Plaintiffs' factual allegations in the Complaint not pertaining to damages admitted. Fed. R. Civ.

P. 8(b)(6); *Ryan*, 253 F.3d at 780. Plaintiffs' Motion was filed on June 2, 2014, and Defendants

still did not respond. It is within the Court's discretion to grant default judgment when a

defendant is unresponsive. *See* Fed. R. Civ. P. 55(a)–(b); *see also*, *Park Co. v. Lexington Ins.*

*Co.*, 812 F.2d 894, 895-96 (4th Cir. 1987) (upholding a default judgment when the defendant did

not respond to the plaintiff's complaint, even though the defendant would have had a valid defense had it responded); *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because the defendant had been properly served with the complaint and did not respond, even after the plaintiffs tried repeatedly to contact him); *see also*, *Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment was appropriate because the defendant was "unresponsive for more than a year" after denial of his motion to dismiss, even though he was properly served with the plaintiff's motions for entry of default and default judgment).

For the reasons stated below, it is my recommendation that Plaintiffs be awarded default judgment. In determining damages, I find that no evidentiary hearing is necessary and instead rely on the declarations and other evidence of record, such as a delinquency calculation analysis and itemization of legal fees and costs, to determine the appropriate sum.

### A.  Default Judgment

In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability. *See Ryan,* 253 F.3d at 780–81. Nevertheless, the Court must determine "whether the well-pleaded allegations . . . support the relief sought in this action." *Id.* at 780. Plaintiffs' allegation of unpaid contributions supports their cause of action under ERISA, the collective bargaining agreements, and the settlement agreement. Under ERISA:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained
> agreement shall, to the extent not inconsistent with law, make such contributions
> in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Moreover, where a pension plan prevails in an ERISA action, a court shall award: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages

(4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has found that these sections of ERISA are intended to "provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Laborers' Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 542 (1988). The Fourth Circuit has likewise found that in an action based on § 515 of ERISA, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997)); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013).

Under the settlement agreement, Defendants agreed to pay to satisfy the debt from prior missed contributions and to stay current with its payment obligations for subsequent contributions to the Collective Funds. In the event of missed payments, Defendants agreed to pay 5% interest after five days, liquidated damages, costs, and attorneys' fees. Plaintiffs have alleged that Defendants periodic settlement payments and subsequent contributions are late. Plaintiffs' well-pleaded factual allegations therefore support the relief requested and it is my recommendation that the Court grant the Motion.

**B. Damages**

Plaintiffs' Motion asserts that Defendants owe:

a) $134,064.10 based on the settlement agreement;

b) $160,217.48 for subsequent past-due contributions to the Collective Funds;

c) $49,379.68 in interest assessed at 12% per annum;

d) $42,442.51 in liquidated damages; and

e) $505.00 in costs and $1,381.25 in attorneys' fees.

In support of their request for delinquent contributions, Plaintiffs submit the declaration of John P. Eger, Assistant Fund Administrator for the Collective Funds.  ECF No. 20, Ex. A.  In support of their request for reasonable attorneys' fees and costs, Plaintiffs' counsel Charles W. Gilligan submits a declaration.  ECF No. 20, Ex. C.  I accept the sworn representations of both Mr. Eger and Mr. Gilligan as to the contributions and attorneys' fees and costs owed by Defendants and find there is adequate evidence with respect to damages to make a hearing unnecessary.  *See Monge*, 751 F. Supp. 2d at 794–96.  For the reasons enumerated below and as of the date of the Motion, I recommend the Court award judgment in favor of Plaintiffs in the total amount of $387,990.02.

### a)  Settlement Agreement

On June 20, 2011, the parties entered into a settlement agreement allowing for periodic payments totaling $155,981.05.  Defendants fell behind on their payments and, as Mr. Eger confirms, are now in default on $134,064.10.  ECF No. 20 Ex. A.  Under the terms of the settlement agreement, at the moment Defendants fell behind on their settlement payments, Plaintiffs became entitled to collect the entire outstanding balance.  ECF No. 23 Ex. A.  After reviewing the evidence of record, I recommend the Court award Plaintiffs $134,064.10 based on the terms of the settlement agreement.

### b)  Subsequent Past-Due Contributions

Plaintiffs claim Defendants owe $160,217.48 for past due contributions to the Collective Funds for the months of September 2011 through March 2012.  Mr. Eger confirms that past-due contributions owed from September and October 2011 amount to $53,269.00.  ECF No. 20,

Ex. A.  The amount United owes to the Collective Funds is based on the number of hours worked by United employees as set forth in the Complaint.  Where United has not made contributions or reported the number of hours employees have worked, the Collective Funds are entitled, under the collective bargaining agreements, to estimate the amount United owes the Collective Funds. ECF No. 23, Ex. N-Q, Art. VI § 7.  Mr. Eger confirms that based on this projection, United owes $22,927.78 per month (ECF No. 20, Ex. A) which I find, spread over the five months between November 2011 and March 2012, amounts to $114,638.90.  Combined with the $53,269.00 owed for September and October, Defendants appear to owe $167,907.90.  If Plaintiffs have applied the $7,690.39 collected from Defendants towards this debt, Defendants owe $160,217.51.  However, the claimed amount appears a fair estimate of the amount Defendants owe in past-due contributions, and I therefore recommend the Court award Plaintiffs $160,217.48 as claimed.

       *c)  Accrued Interest*

Plaintiffs allege that Defendants owe $49,379.68 in interest assessed through June 12, 2014.  Under the collective bargaining agreements, Plaintiffs are entitled to interest on any unpaid contributions.  ECF No. 23, Ex. R.  In addition, ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the plan."  29 U.S.C. § 1132(g)(2).  The Guidelines for Participation in the Sprinkler Industry Trust Funds provide for interest on late paid contributions of 12% per annum (ECF No. 23, Ex. R).  Thus, after reviewing the evidence of record, I recommend the Court award Plaintiffs their requested amount of $49,379.68 in interest.

*d) Liquidated Damages*

Plaintiffs allege Defendants owe $42,442.51 in liquidated damages.  Under ERISA, a prevailing plaintiff is entitled to "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid contributions] determined by the court." 29 U.S.C. § 1132(g)(2)(C)(ii).  Under the collective bargaining agreements:

> If an Employer does not pay the amounts due to the Fund by the due date, that Employer is delinquent and the following, in the discretion of the Trustees, will be added to and become part of the amount due from the Employer: (1) liquidated damages in the amount of ten percent (10%) of the amount due for the month if payment is not received by the due date; an additional five percent (5%) liquidated damages if payment is not received by the first (1st) of the month following the calendar month in which payment was due and an additional five percent (5%) liquidated damages if payment is not received by the fifteenth (15th) day of the month following the calendar month in which payment is due plus interest from the due date to the date of payment at the rate determined by the Trustees which may not exceed the rate provided under Section 6621 of the Internal Revenue Code.

ECF No. 23, Ex. N-Q, Art. VI § 6.  Based on these provisions, Eger confirms that Defendants owe Plaintiffs $42,422.51 in liquidated damages.  ECF No. 20, Ex. A.  Because Defendants have defaulted on their settlement obligations, Plaintiffs may assess both liquidated damages on contributions missed after the settlement agreement *and* re-assess liquidated damages on the missed contributions from before the settlement.  ECF No. 23, Ex. A.  Before the settlement, Defendants had failed to contribute $186,467.38 (ECF No. 23 Ex. A), and after the settlement, Defendants failed to contribute $160,217.48.  Even crediting back the amount of the settlement obligation paid by Defendants, Defendants are still in default on well over $250,000 in contributions.  Thus the claimed liquidated damages amount does not exceed 20% of the total amount of unpaid contributions, and does not violate the 20% cap under ERISA.  29 U.S.C. § 1132(g)(2)(C)(ii).  After reviewing the evidence of record, I recommend the Court award Plaintiffs $42,422.51 in liquidated damages as claimed.

*e)  Attorneys' Fees and Costs*

Plaintiffs allege Defendants owe $505.00 in costs and $1,381.25 in attorneys' fees.  In an ERISA action, a district court may award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits."  *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citing *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 245 (2010) (citation omitted)).

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee.  The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see Robinson v. Equifax Info. Servs.*, *LLC*, 560 F.3d 235, 243 (4th Cir. 2009).  The Court has endorsed a list of twelve factors, first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which aid a court in determining a reasonable fee.  These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717–19.  The Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount.  *Robinson*, 560 F.3d at 243–44.

A party seeking a fee award "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which she seeks an award.  *See id.* at 244 (citing *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (citation omitted)).  However, failing to provide affidavits from independent counsel is not fatal, for the court may

rely on its own knowledge of the market in determining reasonable fees for that community. While Plaintiffs have not provided information regarding the local market rate, the Local Rules provide guidelines for determining an attorney's reasonably hourly rate in Maryland:

   a. Lawyers admitted to the bar for less than five (5) years: $150–225.
   b. Lawyers admitted to the bar for five (5) to eight (8) years: $165–300.
   c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225–350.
   d. Lawyers admitted to the bar for fifteen (15) years or more: $300–475.
   e. Paralegals and law clerks: $95–150.

Local Rules App. B, 3 (D. Md.).  Plaintiffs' counsel, a partner at the law firm of O'Donoghue & O'Donoghue, filed a declaration to support his contention that Plaintiffs have incurred $1,381.25 in attorneys' fees.  ECF 20.  *Johnson* factors one and nine are most persuasive in evaluating Plaintiffs' request for attorneys' fees.  Factor one is relevant because Plaintiffs' attorney spent time and effort preparing the Motion.  Factor nine is relevant because a more experienced attorney is expected to perform more efficiently.  *See Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 491 (D. Md. 2005).  Plaintiff's counsel billed at an hourly rate of $275.00 and the paralegal billed at an hourly rate of $100.00. Mr. Gilligan has been a partner at O'Donoghue & O'Donoghue since 1993.  The Local Rules advise that a reasonable hourly rate for an attorney admitted to the bar for fifteen or more years is $300.00 to $475.00; therefore, Mr. Gilligan's rate of $275.00 per hour is not only reasonable, but gracious.  *See* Local Rule App. B, 3(d).  Additionally, the Local Rules advise that a reasonable hourly rate for a paralegal is somewhere between $95.00 and $150.00.  *Id.* at 3(e).  The paralegal's hourly rate of $100.00 also appears reasonable.

Plaintiffs' counsel provided a detailed itemization of legal fees and costs.  ECF 20, Ex. D. The records show that Mr. Gilligan billed 0.75 hours and that the paralegal billed 11.75 hours in the case.  These hours are reasonable considering the amount of labor required to initiate the

case, take the necessary procedural steps in moving for default judgment, and prepare sufficient evidence in support of the damages requested.  Moreover, the requested legal costs in the amount of $350.00 for filing and $155.00 for server fees are appropriate.  Applying the lodestar method and the Local Rules to Plaintiffs' request, I recommend that the Court award Plaintiffs $505.00 in costs and $1,381.25 in attorneys' fees.

## IV.    Conclusion

Based on the foregoing, it is my recommendation that the Court GRANT Plaintiffs' Renewed Motion for Default Judgment Against Defendants and enter judgment against Defendants for the awards enumerated above in the total amount of $387,990.02.


September 25, 2014                                      _____/s/_____
                                                       Charles B. Day
                                                       United States Magistrate Judge

CBD/sdh